FILED
2020 NOV 10 PM 3:03
CLERK
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| **SUSAN KARLENE PETERSEN,**<br><br>        **Plaintiff,**<br><br>        **vs.**<br><br>**ANDREW M. SAUL, Commissioner of Social Security,**<br><br>        **Defendant.** | **MEMORANDUM DECISION & ORDER**<br><br>**Case No. 1:19-cv-00123-DBP**<br><br>**Magistrate Judge Dustin B. Pead** |

## INTRODUCTION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Susan Karlene Petersen ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). After careful review of the entire record, the parties' arguments and the relevant legal authorities, the court finds the Commissioner's decision to be legally sound and supported by substantial evidence.[1] Accordingly, as set forth herein, the Commissioner's decision is hereby AFFIRMED.[2]

---

[1] Plaintiff has not filed a reply memorandum and the time within which to do so has expired. (ECF No. 15, Administrative Appeal Scheduling Order.)

[2] The parties in this case consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment with appeal to the United States Court of Appeals for the Tenth Circuit. (ECF No. 13.) *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

## BACKGROUND

On July 18, 2016, Plaintiff protectively filed a Title II application for disability benefits, alleging disability beginning on April 11, 2015. (Tr. 266-272.) Plaintiff's claim was denied initially on September 20, 2016, and upon reconsideration on November 9, 2016. (Tr. 191-194; Tr. 195-197.) An administrative hearing was held on August 23, 2018, before Administrative Law Judge ("ALJ") Gerald R. Bruce and, in a decision dated October 19, 2018, ALJ Bruce denied Plaintiff benefits finding Plaintiff was no disabled under the Act. (Tr. 138-155.)

The ALJ's October 19, 2018 written decision ("Decision") follows the familiar five-step sequential evaluation for assessing disability. *See generally* 20 C.F.R. § 404.1520(a)(4) (outlining the process). As relevant here, the ALJ found Plaintiff had severe (status-post total right knee arthroplasty) and non-severe (acute cystitis, urinary tract infection, degenerative disc disease of the thoracic spine, hypothyroidism, gastroesophageal reflux and obesity) impairments, but that her medical condition did not meet or equal the criteria of the per se disabling impairments listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 141-45.) Based thereon, the ALJ concluded that that Plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of sedentary work, including her past relevant work as a police clerk as well as other jobs in the national economy. (Tr. 146-49.)

As part of her request for review of the ALJ's Decision, Plaintiff submitted new medical evidence to the Appeals Council. (Tr. 2-8.)  On August 27, 2019, the Appeals Council notified Plaintiff that her request was denied and indicated that the additional evidence "does not show a reasonable probability that it would change the outcome of the decision." (Tr. 3.) As a result, the

ALJ's decision remained the final decision of the Commissioner and an appeal to this court

followed. (Tr. 2-8); *see* 20 C.F.R. §§ 404.981, 422.210(a).

## STANDARD OF REVIEW

On judicial review, an ALJ's findings "'shall be conclusive' if supported by 'substantial

evidence.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1153 (2019) (*quoting* 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla" and requires only "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and

citations omitted). Under this standard, the court may neither re-weigh the evidence nor

substitute its judgment for that of the ALJ. *See Henderson v. Colvin,* 767 F.3d 951, 954 (10th Cir.

2014). Further, a reviewing court's inquiry is case-by-case and should defer "to the presiding

ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157.

## DISCUSSION

On appeal, Plaintiff does not allege that the ALJ erred in his Decision. Rather, Plaintiff

asks the court to remand based on "new evidence" submitted to the Appeals Council following

issuance of ALJ's October 2018 Decision. (Tr. 41-137.) Plaintiff offers the new evidence to

establish that her recurrent Urinary Tract Infections ("UTI's) and incontinence meet the 12-

month durational requirement so as to be considered a severe impairment under step 2 of the

analysis.

### 1.  Revised Rules For New Evidence

Under the recently revised rules, applicable at the time of Plaintiff's August 2018

administrative hearing and December 2018 request for review,[3] a claimant must make every

---

[3] The new regulations became final on January 17, 2017, with compliance required by
May 1, 2017. *See* SSA, *Ensuring Program Uniformity at the Hearing and Appeals Council*

effort to ensure that the ALJ receives all of the evidence and must submit or inform the ALJ

about any written evidence no later than five business days before the date of the scheduled

hearing, unless one of the identified circumstances applies. *See* 20 C.F.R. § 404.935(a)-(b); *see*

*also* SSA, *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the*

*Administrative Review Process,* 81 Fed. Reg. 90987 (Dec. 16, 2016). If additional evidence is

submitted after issuance of an ALJ's decision, the claimant must establish: (1) the evidence is

new, material, and relates to the period on or before the date of the hearing decision; (2) there is

a reasonable probability that the additional evidence would change the outcome of the decision;

and (3) there is good cause for not submitting the evidence earlier. 20 C.F.R. § 404.970(a)-(b). If

any one of these requirements is not established, the Appeals Council will deny review and the

ALJ's decision becomes the final decision of the Commissioner for purposes of judicial review.

*See* 20 C.F.R. §§ 404.970; 404.981; 422.201(a).

### 2.  Review of New Evidence

When the Appeals Council receives and considers new evidence, but declines review,

"the additional evidence becomes part of the record for purpose of the Court's analysis."

*Williams v. Berryhill,* 2018 U.S. Dist. LEXIS 76033 *5 (W.D. Wash. 2018) (*citing Brewes v.*

*Commissioner*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[w]hen the Appeals Council considers new

evidence in deciding whether to review a decision, that evidence becomes part of the

administrative record, which the district court must consider when reviewing the

Commissioner's final decision.") (citation omitted); *Riston v. Comm'r of SSA,* 2020 U.S. Dist.

LEXIS 141506 *3 (Dist. Ariz. 2020) (where Council rejects evidence "based on a determination

---

*Levels of the Administrative Review Process,* 81 Fed. Reg. 90987 (Dec. 16, 2016).

of its materiality or weight, it has considered the evidence if it concludes to not include it in the administrative record.") (citation omitted).

In its denial of Plaintiff's request for review, the Appeals Council explained that the additional evidence provided "does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2-8); 20 C.F.R. 404.970(a)-(b). Thus, because the Appeals Council considered the evidence and concluded it would not change the outcome of the decision, the district court must conduct a substantial evidence review by assessing the entire agency record, including the newly submitted evidence, in light of the ALJ's decision. *See Martinez v. Barnhart,* 444 F.3d 1201, 1207-08 (10th Cir. 2006).

### 3.   New Evidence: Tanner Clinic Records

The new evidence provided to the Appeals Council consists of Plaintiff's medical records from Tanner Clinic dated October 19, 2018 to April 19, 2019. (Tr. 3.) These records show that Plaintiff continued to seek treatment for UTIs in July 2018 (Tr. 116) and August 2018 (Tr. 105) and that Plaintiff was treated for a kidney stone in October 2018. (Tr. 100, 131.) In January 2019, Plaintiff reported UTI symptoms but also stated she had run out of her UTI medication. (Tr. 80.) Thereafter, in January and February of 2019, Plaintiff was treated for "random" incontinence (Tr. 58, 71) and referred to a urologist. (Tr. 69.) In April 2019, Plaintiff complained that her medication did not help and discussed alternative treatments with her provider (e.g. pelvic floor exercises). (Tr. 51.)

### 4.   Analysis

In challenging the ALJ's decision, Plaintiff does not allege that the ALJ erred in concluding her UTI's were non-severe. Rather, Plaintiff contends that the newly presented evidence, along with the evidence already before the ALJ, renders the "ALJ's Step 2 finding that

Plaintiff's chronic UTIs were not durationally severe. . . no longer supported by substantial

evidence." (ECF No. 16 at 6.) Specifically, Plaintiff asserts the cumulative evidence shows her

UTI's meet the durational requirements for a severe impairment because they occurred over a

twelve-month period from December 13, 2017 through January 17, 2019. (ECF No. 16 at 6.)

Plaintiff's claim rests on the assumption that the ALJ concluded that her

UTIs were non-severe because they did not meet the 12-month durational requirement. *See* 20

C.F.R. § 404.1509 (impairment "must have lasted or must be expected to last for a continuous

period of at least 12 months"); *Barnhart v. Walton,* 535 U.S. 212, 219, 221-22 (2002)

(recognizing claimant is not disabled if "'within 12 months after the onset of an impairment . . .

the impairment no longer prevents substantial gainful activity'") (*quoting* 65 Fed. Reg. 42774

(2000)). This assumption, however, is incorrect. The ALJ's Decision does not make any findings

as to whether Plaintiff's UTI's met the durational requirement. Instead, the ALJ concluded that

the impairment, along with several other medically determinable impairments, was non-severe

because it did not "cause more than a minimal limitation on [Plaintiff's] ability to perform basic

work activities." (Tr. 144.) Plaintiff does not challenge this conclusion and the new evidence

submitted to the Appeals Council does not undermine this finding.

The new evidence shows that Plaintiff continued to seek treatment for her UTIs in July

2018 (Tr. 116) and August 2018 (Tr. 105). Plaintiff was also treated for kidney stones in October

2018.[4] Nonetheless, diagnosis alone is not sufficient to establish a "severe" impairment within

---

[4] Plaintiff also relies on evidence post-dating the ALJ's October 2018 Decision, noting that she was treated for incontinence and other bladder issues throughout 2019. (Tr. 51, 58, 69, 71, 80, 81.) The ALJ decided Plaintiff's case through October 19, 2018. (Tr. 150). As a result, any medical evidence generated after the ALJ's Decision, that does not specifically relate back to the period relevant to the ALJ's Decision (April 11, 2015 through October 19, 2018) is not relevant to Plaintiff's claim. *See, e.g., Villalobos v. Colvin,* 544 F. App'x. 793, 796 (10th Cir.

the meaning of the regulations. *See Cowan v. Astrue,* 552 F.3d 1182, 1186 (10th Cir. 2008)

("while the showing a claimant must make at step two is *de minimum*, a showing of the mere

presence of a condition is not sufficient"). Rather, Plaintiff must show that the impairment

"significantly limit[ed]" her ability to perform "basic work activity." *Hawkins v. Chater,* 113

F.3d 1162, 1169 (10th Cir. 1997) (at step two a claimant has the burden to "demonstrate an

impairment or combination of impairments that significantly limits the claimant's ability to do

basic work activity.") (*citing* 20 C.F.R. § 416.920(c)).

     Here, the medical records fail to establish that Plaintiff's UTIs "significantly limit[ed]"

her abilities in any way and there is no evidence that Plaintiff complained of any specific

limitations, work-related or otherwise, during any of her medical visits. (Tr. 100, 105, 111, 131).

Further, while Plaintiff claims that her bladder impairments "could certainly cause" functional

limitations, including the ability to sustain attendance, stay on task, or maintain focus, Plaintiff

fails to point to any objective medical evidence as support for her claim. (ECF No. 16 at 7); *see*

*also* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an

impairment(s) and how severe it is during the time you say that you are disabled. You must

provide evidence, without redaction, showing how your impairment(s) affects your functioning

during the time you say that you are disabled, and any other information that we need to decide

your claim."). Indeed, Plaintiff did not testify to any limitations caused by UTIs, and the record

does not reflect that any physician, treating or otherwise, opined that she would experience  work

---

2013) (unpublished) (refusing to remand based on doctor's opinion submitted to Appeals
Council where doctor's diagnosis was not retrospective); *see also Hamlin v Barnhart,* 365 F.3d
1208, 1217 (10th Cir. 2004) (medical evidence beyond date law insured may be considered to the
extent it sheds light on the nature and severity of claimant's condition during the relevant time
period). Here, there is no evidence that these medical records relate back to the pertinent time
period (*see, e.g.,* Tr. 51, 58, 69, 71, 80-81). Thus, they are not relevant.

limitations related to her bladder impairments. (Tr. 9-35). While the record reflects a December 2016 letter in support of Plaintiff's claim for disability, from treating physician Rohn C. Rigby, M.D. ("Dr. Rigby"), Dr. Rigby indicated that Plaintiff could not work due to her knee replacement, not because of UTIs or other bladder issues. (Tr. 626.) Further, state agency physician Kathleen Tucker, M.D. ("Dr. Tucker") opined that Plaintiff retained physical abilities consistent with light work. (Tr. 177-79). Thus, Plaintiff fails to meet her burden to show her UTIs resulted in any limitations that the ALJ should have included in the RFC assessment.

Finally, Plaintiff asserts that the ALJ did not evaluate her incontinence and the new evidence demonstrates that she continued to experience this issue. But again, the relevant issue is not the impairment itself, but limitations stemming from the impairment. As discussed, "disability requires more than the mere inability to work without pain." *Brown v. Bowen,* 801 F.2d 361, 362-63 (10th Cir. 1986). Here, as with Plaintiff's UTIs, other than speculation, the record fails to provide any medical evidence offered in support of incontinence related limitations. (ECF No. 16 at 7) ("dealing with urinary incontinence at a work site *could* certainly cause problems focusing on a skilled occupation level job, and *could* certainly contribute to off-task behavior or absenteeism.") (emphasis added). Moreover, there is no evidence indicating that Plaintiff complained to her treatment providers about any work-related limitations stemming from her incontinence or that she testified as to such issues. (Tr. 9-35, 100, 105, 116, 131, 566, 575-77, 579, 585.) As a result, this claim must also fail.

8

## CONCLUSION

For the reasons discussed, the ALJ's decision is supported by substantial evidence and

legally sound. Accordingly, the Commissioner's decision denying Plaintiff's claim for disability

benefits is AFFIRMED.

Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S.

Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304

(1993).


DATED this 10th day of November 2020.

_____

DUSTIN B. PEAD
United States Magistrate Judge